That on or about 1 January, 1793, the plaintiffs, children of (373) John McKerall, and William McKerall, another of the children who was made a defendant to the bill, and Mrs. Child, caused an account to be stated of the estate of John McKerall, whereby a balance of £ 2,057 6 7 was found to be due to the estate from Mrs. Child, and on 31 January, 1803, the plaintiffs received their shares under such settlement.
The bill then charged that in the settlement were divers errors, which were particularized. The only one material in the cause was that the executrix gave credit for the sum of £ 220 only, Virginia currency, as cash received by her from John Niveson, of Norfolk, when in truth she received £ 301 3 5.
It was further stated in the bill that the plaintiffs never discovered this error until six months before filing the bill; that letters of administration on the estate of John McKerall, within North Carolina, had been *Page 176 
granted to the plaintiffs, and that they had applied in vain to Mrs. Child to have the error rectified.
The prayer of the bill was that the defendant Mrs. Child might be decreed to rectify the settlement and account, and to supply and correct its errors and omissions, and pay to the plaintiffs what might be coming to them.
The account and settlement, which were made part of the bill, exhibited a balance due, as before stated, and contained also the following statement:
"We, Absalom Tatom and John Hogg, at the desire and request of the widow and heirs of John McKerall, heretofore of Norfolk, in Virginia, deceased, viz., Mrs. Frances Child, heretofore widow and administratrix of said John McKerall, deceased, but now widow of Francis Child, Esq., deceased, Miss Frances McKerall, daughter, and John McKerall and William McKerall, sons of the said John McKerall, deceased (the said William, who is a minor, appearing and consenting hereto by his brother John, as is suggested by said John), having proceeded to state and settle the account of Francis Child, Esq., deceased, who intermarried with Frances McKerall, widow and administratrix of said John McKerall, deceased, for his (the said Francis's) intromissions with the estate of said John McKerall, deceased, do, from the vouchers and statements handed to us by the parties, find the amount to stand as above (374) stated, by which it appears that the net amount of said estate in the hands of the executrix of the said Francis Child, deceased, on 1 January, 1793, was, etc. [Then follows a statement of the gross amount, and the share of each.] In which account we have not included or taken into view any charge the said Frances may have against the said children for boarding, clothing, and schooling, previous to and during her intermarriage with the said Francis Child, Esq. The said parties having, in our presence, assented to and signified their approbation to this statement and settlement."
This was signed by Messrs. Tatom and Hogg, and bore date 13 August, 1793.
A receipt for their shares, signed by plaintiffs, and dated 1 January, 1803, followed.
Mrs. Child, by her answer (so far as it is here material), insisted on the great length of time which had elapsed since the accounts were settled by referees chosen by all parties; and as to the error in the sum received from Nevison, she stated that Nevison was her agent and attorney to settle and collect an account due from one Sheddon in Norfolk; that Sheddon had an account against her husband, McKerall, and that on the adjustment of these accounts by Mr. Nevison the balance due her husband's estate, as she believed, was £ 220, for which she had once accounted *Page 177 
to plaintiffs, and she expressly averred that, and no other, to be the sum received by her from Mr. Nevison.
As to the discovery of errors in the account by plaintiffs, but six months before the bill was filed, she denied it.
At March Term, 1824, of Orange Court of Equity, on motion of complainant's solicitor, the cause was referred to the clerk and master of that court to take the account and report to the next term of the court. At the following term the clerk and master reported that Mrs. Child had fully accounted for the estate of John McKerall, except as to the sum of £ 81 3 6, Virginia currency, received from John Nevison, as appeared by his deposition, which was referred to, and which the master stated to be the only proof. No exceptions were filed below to the master's report; but at the same term the cause was removed to this Court, on the affidavit of Mrs. Child. (375)
Mr. Nevison's deposition stated that Mrs. Child, while the widow of McKerall, and residing in North Carolina, placed in his hands as an attorney a number of claims, belonging to the estate of McKerall, on various persons residing in various places; that the length of time rendered it impossible for him to speak positively.
That one of these claims was against Sheddon, and the deponent believed was received by him at different times and from different persons; but the deponent could not recollect with certainty, nor could he resort to his books, as they had been sent away during the late war, and had not been brought back; that the only claim on which he ever received anything for Mrs. Child was that against Sheddon.
The deposition further stated that of the money thus received, the deponent "paid to Mrs. Child the sums stated as per a memorandum on an annexed commission, which memorandum was taken prior to his books being sent away, to enable the deponent to state the sums so paid, in a deposition then intended to be taken at the request of Mr. Bruce, but which was prevented, he believes, by the interruption of the times." The sums were then stated in three items, and exceeded the sum with which Mrs. Child had been charged in the settlement by £ 81 3 6.
Deponent further stated that he made no agreement for the amount of his compensation; he charged a commission of 5 per cent on money received; for traveling on his client's business, not only the traveling expenses, but a compensation for the same; and for all other business, customary fees according to the service, and that he made several journeys on the business of Mrs. Child. That not long before the late war the plaintiffs called on him and asked information relative to his transactions as the agent and attorney of Mrs. Child, when he showed them his books and vouchers and gave them a memorandum. (376) *Page 178 
On the opening of the cause here, Badger for complainants said that as no exceptions had been filed below to the report of the clerk and master, nothing remained for complainants to do but to move for a confirmation of the report, and to take a decree accordingly, that the reference to the master was an interlocutory decree, showing that this was a proper case to surcharge and falsify in, and the question could not be here debated.
The object of this bill is to surcharge for an omission made in a settled account closed between the parties something less than twenty years before the filing of the bill, and relative to transactions which date their existence about forty years before. In such a case there ought to be clear and satisfactory evidence of the existence of the error, and I do not think that the deposition of Nevison, singly opposed to the answer, containing as strong a denial as the nature of the subject admits of, affords such evidence.
The master's report is founded solely on that testimony, as appears upon the face of it, and this warrants the application of the rule that there cannot be a decree in this Court upon the testimony of a (382) single witness, unsupported by circumstances, against the positive denial in an answer which is responsive to the bill. Her answer is that upon the adjustment of the accounts by J. Nevison she does not believe that the balance found to be due was £ 336 13 4, the sum with which she is charged by the referees; "and she does expressly aver that to be the sum she received from her said attorney, J. Nevison, and no other."
I am also of opinion that the complainants have not sufficiently accounted for the delay in not exhibiting this claim at an earlier period. The reason stated in the bill is unsatisfactory, that they did not know of it until six months before the filing of the bill. When the account was stated by the referees, at the instance of all parties concerned, it is fair to presume that men of business would take the obvious and easy method to become acquainted with their rights, that they might be prepared to exhibit just and repel unjust charges. Mr. Nevison was known to be the attorney for the estate, and charged with the collection of debts due to it. When the account was stated the administrators are charged with money paid by Nevison; and it was entirely in the power of the complainants to ascertain, within a reasonable period from the settlement, whether greater sums had been received from the attorney than the *Page 179 
estate had been credited for. Long delay, in matters of account, places the accounting party under insuperable difficulties, especially where he is to be charged by memorandums of a third person. An earlier application might have revived the memory of circumstances serving to show that the credit has been rightly given. The very forbearance to make a demand is considered as affording a consciousness that it was satisfied, or an intention to relinquish it.
"The Court will not aid stale demands, where the party has slept upon his rights and acquiesced for a great length of time; the activity of the Court can only be awakened by conscience, good faith, and reasonable diligence; where these are wanting, the Court is passive (383) and does nothing. Laches and neglect are always discouraged; and, therefore, from the beginning of this jurisdiction there was always a limitation to suits in this Court." 3 Bro., 639. In one case it has been held that if the party, upon a notice that nothing was due, did not investigate his own account, and never made any demand for the money, a demurrer should be allowed upon the statute of limitations. 19 Vesey, 188. That case was within the statute of limitations; but it held that though the court follows the law by analogy to the statute, it does not adopt it in all cases. It may be equitable to demand a debt, though not legal; but if it be not equitable, the party will be left to law. After a great length of time without suit, it shall be presumed that the balance is satisfied. Though this is not a case affected by the legal limitation, yet it comes within the law of this Court, and presents a case wherein laches have made the demand inequitable. 5 Vesey, 678.
I am of opinion that the bill should be dismissed.